UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSEPH RUSSELL CAMP | ) | |
|     Debtor | ) | |
| ************************** | ) | |
| | ) | |
| JOSEPH RUSSELL CAMP | ) | Appeal from the U.S. Bankruptcy Court |
| PAUL R. CHAEL, | ) | Northern District of Indiana |
| | ) | |
|     Appellants, | ) | |
| | ) | |
| vs. | ) | NO. 2:06-CV-286 PS |
| | ) | |
| SELECT PORTFOLIO SERVICES | ) | |
| INC. | ) | |
|     Appellee. | ) | |

**OPINION AND ORDER**

Joseph Camp declared Chapter 13 bankruptcy in early 2005. Select Portfolio subsequently filed a secured claim against Mr. Camp and his wife's residence. Camp objected to the claim because of a technical error in the mortgage. More precisely, the mortgage incorrectly defined both Mr. and Mrs. Camp as executors of a note securing the mortgage when, in fact, only Joseph Camp signed the note. Despite this error, Bankruptcy Judge Lindquist found that the mortgage gave any bona fide purchaser constructive notice of the note secured by the mortgage. I agree with Judge Lindquist's ruling, and therefore the opinion of the bankruptcy court is AFFIRMED.

**I.  BACKGROUND**

Debtor Joseph Russell Camp and his wife, Pamela Camp, executed a mortgage on April 26, 1999 against property in Winfield, Indiana in favor of EquiCredit Corporation of Indiana.

(Stipulation of Facts at ¶¶ 1, 4 [DE 1-18].)  Joseph and Pamela own this property jointly as tenants by the entireties.  (*Id.* at ¶ 1.)  The Mortgage was recorded on May 10, 1999 in the Lake County Recorder's Office.  (*Id.* at ¶ 4.)

> The Mortgage states the following:
>
>> This Mortgage ("Security Instrument") is given on <u>April 26, 1999</u>.  The mortgagor is: <u>JOSEPH R. CAMP AND PAMELA CAMP, HUSBAND AND WIFE</u> ("Borrower").  This Security Instrument is given to <u>EquiCredit Corporation of In.</u> . . . ("Mortgagee" or "Lender").  Borrower owes Lender the principal sum of <u>ONE HUNDRED SIXTY-NINE THOUSAND FIVE HUNDRED</u> Dollars (U.S. $ <u>169,500.00</u>).  This debt is evidenced by Borrower's note dated <u>April 26, 1999</u>, which provides for monthly payments, with the full debt, if not paid earlier, due and payable on <u>May 1, 2009</u>.

[DE 7-2 at 4].  Thus, both parties stipulate that the Mortgage indicates that it is secured by a promissory note executed by both Joseph and Pamela Camp and defines them collectively as the "Borrower."  (Stipulation of Facts at ¶ 7.)  However, this is not accurate.  In reality, the Note was only executed by Joseph Camp.  (*Id.* at ¶ 2.)  Pamela never signed it.  (*Id.*)  Accordingly, the Note defines and refers to only Joseph as the "Borrower."  (*Id.* at ¶ 6.)  At no time did both Joseph and Pamela Camp execute a note to secure the Mortgage.  (*Id.* at ¶ 8.)

Joseph Camp executed this Note on April 26, 1999 – the same day Joseph and Pamela executed the Mortgage – with EquiCredit Corp. in the principal amount of $169,500.  (*Id.* at ¶ 2.)  The maturity date on the Note is May 1, 2009.  [DE 7-2 at 9].  The Note and Mortgage were subsequently assigned to U.S. Bank.  (*Id.* at ¶ 5.)  Select Portfolio Servicing, Inc., the appellee in this matter, is acting as a servicing agent for U.S. Bank.  (Obj. to Confirmation of Am. Chapter 13 Plan ¶ 1 [DE 1-13]. )

Debtor Joseph Camp then filed a Chapter 13 petition for bankruptcy on January 28, 2005 [DE 1-5]. On March 31, 2005, Select Portfolio filed a secured claim in the amount of $268,103.16 against the Winfield property and submitted copies of the Mortgage and Note [DE 8-3, 8-4]. In response, Debtor filed an Amended Chapter 13 Plan [DE 1-11] on June 17, 2005. In that amended petition, Debtor recognized that he owed money on a note securing his mortgage and provided a repayment plan [*Id.* at 3]. But he also stated another intention:

> the Debtor will file an objection/complaint to avoid lien to the secured claim of [the mortgage company] on the basis that the underlying mortgage is invalid as a matter of law. When successful, the Debtor will have the property free and clear of all liens and [the mortgage company] will be an unsecured creditor of the estate.

[*Id.*] Debtor subsequently objected to Select Portfolio's secured claim and filed a counter-claim for lien avoidance [DE 1-15] because the "Mortgage does not sufficiently describe the debt it purports to secure and is not supported by sufficient consideration[.]" (Obj. Claim # 3 at 1.) Thus, according to Debtor, Select Portfolio does not have a proper claim, and under Indiana law the Mortgage is not a valid lien and should be avoided. (*Id.* at 2, 3.)

Select Portfolio responded that the underlying Mortgage is valid because it contains signatures of both Joseph and Pamela Camp, was notarized in accordance with state law, describes the debt it supports and is supported by sufficient consideration, and that the Camps' actions indicate that they believed that their property was encumbered by a valid mortgage. (Resp. to Obj. at 2-3 [DE 1-16].)

After briefing by both parties [DE 1-22, 1-23, 1-25, 1-26], Bankruptcy Judge Lindquist denied the Debtor's objection to Select Portfolio's secured claim and denied Debtor's counter-

3

claim [DE 1-27] on June 9, 2006. He emphasized Uniform Covenant 12 that was contained in the Mortgage document. Uniform Covenant 12 states, in relevant part:

> Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, warrant, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

(Mem. Ord. at 6-7 (emphasis omitted).) Judge Lindquist found that this language was clear and unambiguous as a matter of law when construed with the Note. (*Id.* at 8.) Thus, he found that "by the express terms of Uniform Covenant 12, the non-debtor spouse validly mortgaged her interest in the entireties property to [Select Portfolio], notwithstanding the fact that she did not sign the Note secured by the Mortgage and was thus not personally obligated thereon." (*Id.* at 8-9.) Judge Lindquist found that this holding was supported by Indiana and other states' decisions and the Restatements of Law-Property. (*Id.* at 9-11.) He also held that the Mortgage sufficiently described the debt (that is, the Note) to be secured by the Mortgage. (*Id.* at 12.) Finally, he found that any potential bona fide purchaser had constructive notice of Uniform Covenant 12 and therefore had constructive notice that the debt secured by the Mortgage may include only one of the Borrowers. (*Id.* at 14.) He thus rejected Debtor's claim that, pursuant to 11 U.S.C. § 544(a)(3), the recording of the Mortgage did not provide constructive notice to the Debtor or the Trustee with the rights of a bona fide purchaser. (*Id.* at 13.)

On June 15, 2006, Debtor filed a Motion to Amend Judgment and Order [DE 1-29]. He argued that Judge Lindquist disregarded the arguments set forth by both parties and instead hung

4

his hat on "one provision of the mortgage in question to singlehandedly clean the issue up." (Mem. at 1 [DE 1-31].)  Debtor also asserted that Uniform Covenant 12 is not intended to re-define the debt that is secured by the Mortgage.  (*Id.* at 6-7.)  Rather, it "is a standard provision in a mortgage document so as to not have any confusion if a mortgage co-signor would be obligated for the debt securing the mortgage which he or she did not sign."  (*Id.* at 5.)

Judge Lindquist, however, was not persuaded and denied the Motion [DE 1-34] on July 13, 2006.  He held that the Uniform Covenant 12 provision in the Mortgage puts any potential bona fide purchaser "on constructive inquiry notice of the possibility that the debt secured by the Mortgage may have been personally owed by only one of the Mortgagors."  (Ord. at 4.)  Thus, he decided, that there was a sufficient description of the debt under Indiana law.  (*Id.*)

Debtor appealed Judge Lindquist's decision [DE 1-4], and this Court then permitted the Trustee to join Debtor as an appellant [DE 11].  On May 1, 2007, I held oral argument on this appeal.  For the reasons that follow, Judge Lindquist's decision is affirmed.

## II.  DISCUSSION

In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling.  Fed. R. Bankr. P. 8013.  This Court reviews the bankruptcy court's conclusions of law *de novo* and the bankruptcy court's findings of fact under the clearly erroneous standard.  Fed. R. Bankr. P. 8013; *see also in re Lefkas Gen. Partners*, 112 F.3d 896, 899-900 (7th Cir. 1997).

Debtor has presented two issues for this Court's review: (1) whether the Bankruptcy Court properly found that the debt is adequately described in the Mortgage; and (2) whether the

Mortgage provides constructive notice to a bona fide purchaser as required by federal bankruptcy law. In other words, Debtor argues that because the debt is inaccurately described in the Mortgage, a bona fide purchaser would not be provided with constructive notice of the debt as required by 11 U.S.C. § 544(a)(3).

11 United States Code, Section 544(a)(3), sometimes referred to as the "strong-arm" statute, states:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . .
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, § 544(a)(3) "allows a bankruptcy trustee to avoid [] an encumbrance when it would be voidable by a bona fide purchaser." *In re Sandy Ridge Oil Co., Inc.*, 807 F.2d 1332, 1333 (7th Cir. 1986); *see also in re Sagamore Park Properties*, No. 94-40175, 1995 WL 1049898, at *2 (Bankr. N.D. Ind. Dec. 4, 1995) ("Through the operation of [§ 544(a)(3)], the debtor holds, as a matter of federal law, all the rights of a bona fide purchaser."), *aff'd*, 200 B.R. 332 (N.D. Ind. 1996). Actual knowledge of an encumbrance on a property is irrelevant under § 544(a)(3), regardless of any state law of actual notice. *In re Sandy Ridge*, 807 F.2d at 1336; *In re Baldin*, 135 B.R. 586, 594 (Bankr. N.D. Ind. 1991). Therefore, an encumbrance can be avoided only if a bona fide purchaser would not have constructive notice of it. *See in re Baldin*, 135 B.R. at 594.

To decide whether a bona fide purchaser has constructive notice, we must interpret

6

Indiana law.  *See id.*; *in re Sagamore Park*, 1995 WL 1049898, at *2 ("In order to ascertain the extent of those rights [of a bona fide purchaser], the court must look to state law.").  The Indiana legislature has enacted several statutes enumerating the requirements for a valid mortgage.  *See, e.g.,* Ind. Code 32-21-4-1 (formerly Ind. Code 32-1-2-16) (provides that constructive notice is given by a properly recorded instrument); Ind. Code 32-21-2-3 (mortgage must be acknowledged by grantor to be recorded).  The one most salient to this case is Indiana Code 32-29-1-5 (formerly 32-1-2-15), which sets forth the requirement for a form mortgage and provides:

> Form; mortgage
> Sec. 5. A mortgage of land that is:
>
> (1)  worded in substance as "A.B. mortgages and warrants to C.D." (here describe the premises) "to secure the repayment of" (here recite the sum for which the mortgage is granted, ***or the notes or other evidences of debt, or a description of the debt sought to be secured***, and the date of the repayment); and
>
> (2)  dated and signed, sealed, and acknowledged by the grantor;
>
> is a good and sufficient mortgage to the grantee and the grantee's heirs, assigns, executors, and administrators, with warrant from the grantor . . . and the grantor's legal representatives of perfect title in the grantor and against all previous encumbrances.

Ind. Code 32-29-1-5 (emphasis added).  As is apparent from the language of the statute, a mortgage requires some type of description of the debt.  A mortgage also must be properly acknowledged and recorded to provide constructive notice to subsequent purchasers.  *See Bank of New York v. Nally*, 820 N.E.2d 644, 648 (Ind. 2005).  Furthermore, the mortgage must be recorded in the proper county and must contain an accurate legal description of the property.  *See id.* at 649-50.  Lastly, the mortgage must be in the chain of title.  *See id.* at 650.

Such requirements must be followed because:

7

> [t]he purpose of the Indiana recording statutes . . . is to put all the
> world on notice of prior liens and encumbrances thereby providing
> stability to commercial transactions involving the transfers and
> encumbrances of realty.  Strict compliance with [these] statutes
> permit[] innocent third parties to rely on the authenticity and
> validity of documents in that they were properly executed,
> acknowledged, and recorded.

*In re Baldin*, 135 B.R. at 601.  Pursuant to this policy, Indiana has maintained a long-standing principle that "the recording of a document not entitled to be recorded does not afford constructive notice."  *In re Sandy Ridge Oil Co., Inc.*, 510 N.E.2d 667, 669 (Ind. 1987) (collecting cases).  Following this rule, courts have held, for example, that recording a mortgage with a defective acknowledgment does not provide constructive notice.  *See in re Baldin*, 135 B.R. at 602; *in re Stubbs*, 330 B.R. 717, 731 (Bankr. N.D. Ind. 2005), *aff'd*, No. 2:05-CV-439, 2006 WL 2361814, at *5 (N.D. Ind. 2006).

But as with most rules, there are recognized exceptions.  For instance, a mortgage that omits the preparer's name, thus violating Indiana Code 36-2-11-15(b), still affords constructive notice to a bona fide purchaser.  *See in re Sandy Ridge Oil Co., Inc.*, 510 N.E.2d at 671.  This is because the defect "was not one which would have been fatal to a conveyance or encumbrance. Thus, a title searcher wishing to verify the legal title of the property would have found all the formalities necessary to provide a valid conveyance or [encumbrance]."  *Id.* at 670.  Therefore, even though a mortgage omitting the preparer's name violates Indiana statutory requirements, the mortgage still provides constructive notice.

In the case before us, Debtor does not allege that the Mortgage contains any inaccuracies other than the definition of the Note's Borrower.  This error arguably breaches the statutory requirement for a proper description of the debt, as mandated by Indiana Code 32-29-1-5.  But

8

the story does not end there.  As we're just noted, a technical statutory violation does not automatically defeat constructive notice.  We therefore must look further.  According to Indiana law:

> . . . the description in the mortgage of the indebtedness secured need not be literally accurate, but must be correct so far as it goes, and full enough to direct attention to the sources of correct information in regard to it, and be such as not to mislead or deceive, as to the nature or amount of it, by the language used. The purpose of requiring a reasonably certain description of the debt is to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors.

*Pioneer Lumber & Supply Co. v. First Merchants Nat'l Bank of Michigan City*, 349 N.E.2d 219, 222 (Ind. Ct. App. 1976) (citations and quotation marks omitted).

There is no dispute that the Mortgage complied with almost all of Indiana's statutory requirements.  The Mortgage was duly recorded in the appropriate county and acknowledged.  It contains an accurate legal description of the property and is in the chain of title.

Furthermore, the Mortgage expressly states that an encumbrance (that is, the Note) exists on the property.  The description of the Note in the Mortgage is accurate in all aspects of the debt, including the amount, date of execution, maturity date, and lender, with the exception of the definition of the Note's "Borrower."  Thus, any bona fide purchaser would have constructive notice of the existence of the Note and its amount – the most important aspects of the debt – even if the defined executor of the Note was incorrect.  *See United States v. Arnol & Mildred Shafer Farms, Inc.*, 107 B.R. 605, 608 (N.D. Ind. 1989) (finding that the incorrect name of mortgagor on mortgage was "insufficient to nullify the constructive notice provided by recording the mortgage or to render the mortgage invalid under § 544 as to [mortgagor]"); *Pioneer Lumber &*

9

*Supply Co.*, 349 N.E.2d at 223 (finding that the description of the debt in the mortgage was sufficient where only the description of the maker was inaccurate); *Liberty Mortgage Corp., Inc. v. Nat'l City Bank*, 755 N.E.2d 639, 643 (Ind. Ct. App. 2001) (holding that the description of the debt was sufficient where the mortgage referred to a "promissory note rather than an Equity Reserve Agreement"); *Plummer & Co., Inc. v. Nat'l Oil & Gas, Inc.*, 642 N.E.2d 291, 293 (Ind. Ct. App. 1994) (holding that the mortgage sufficiently described the debt even though the description incorrectly stated that there was a note rather than an "open account").[1]

Armed with all the information contained in the mortgage, a bona fide purchaser then would have a "duty to inquire further" into the substance of the Note. *Arnol & Mildred Shafer Farms*, 107 B.R. at 610. Once he did so, he would find that the Note and the Mortgage were signed on the same day, stated the same amount, described the same lender, and included the same repayment date. Thus, this "reasonably certain description" of the Note in the Mortgage is "full enough to direct attention to the sources of correct information . . . and be such as not to mislead or deceive, as to the nature or amount of it . . . ." *Pioneer Lumber & Supply Co.*, 349 N.E.2d at 222.

Accordingly, the Mortgage provides constructive notice of the Note because "a proper examination of the record would have led a reasonable man to conclude that the property to be mortgaged was subject to a prior encumbrance." *Arnol & Mildred Shafer Farms*, 107 B.R. at

---

[1] Debtor argues that actual knowledge is a key element in the holdings of *Pioneer, Plummer* and *Arnol & Mildred Shafer Farms*. (Mem. at 13-15; Reply at 3.) However, *Arnol & Mildred Shafer Farms* was a bankruptcy case where actual knowledge was irrelevant. Moreover, the Court disagrees that actual knowledge is essential to the holdings of *Pioneer* and *Plummer*. Neither case emphasizes that point. More broadly, these cases simply stand for the proposition that just because a mortgage inaccurately describes the debt does not mean that the mortgage is automatically invalidated.

10

608 (citing 20 Indiana law Encyclopedia Mortgages § 108 at 96-97).  I therefore find that the technical error in the definition of the Note's "Borrower" in the Mortgage is not fatal to giving constructive notice of the encumbrance to a bona fide purchaser.

Holding to the contrary would be neither logical nor pragmatic.  The technical error contained in the Mortgage does not bear upon the "authenticity and validity" of the Mortgage like an error in the recording or the acknowledgment may.  *In re Baldin*, 135 B.R. at 601.  That's because proper recording and acknowledgment "guarantee as much as possible on the face of an instrument that a person purported to have signed a document which affects interests in land actually did sign that document."  *In re Stubbs*, 330 B.R. at 730.  Here, despite the error, an innocent third party is still put on notice of the prior lien.  Thus, although there was a technical violation of Indiana mortgage requirements, concerns that a bona fide purchaser would not have constructive notice of the Note are non-existent.

### III.  CONCLUSION

I find that the description of the Note in the Mortgage – despite the inaccurate definition of the Note's Borrower – gives a bona fide purchaser constructive notice of the Note.  Accordingly, the bankruptcy judge's denial of Debtor and Trustee's counter-claim and of their objection to Select Portfolio's secured claim is AFFIRMED.

**SO ORDERED**.

ENTERED: August 2, 2007

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
